[No. B208142. Second Dist., Div. Seven. Dec. 30, 2008.]

CRAB ADDISON, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERTO MARTINEZ, Real Party in Interest.

**COUNSEL**

Epstein Becker & Green, Michael S. Kun and Ted A. Gehring for Petitioner.

No appearance for Respondent.

Righetti Law Firm, Matthew Righetti, John Glugoski; Law Offices of Ellen Lake and Ellen Lake for Real Party in Interest.

**OPINION**

**JACKSON, J.—**

## INTRODUCTION

Petitioner Crab Addison, Inc. (CAI),[1] seeks a writ of mandate directing the trial court to vacate two orders granting discovery to real party in interest Roberto Martinez (Martinez). We deny the petition.

---

[1] CAI was sued erroneously as Joe's Crab Shack, Inc.

■■■■■■■■■■■■

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2007, Martinez filed his complaint as a class action, alleging causes of action for violation of the Labor Code, violation of Business and Professions Code section 17200 et seq. ("Unfair Competition Law") and failure to provide mandated meal periods and rest breaks in violation of the Labor Code and orders of the Industrial Welfare Commission. Martinez alleged that CAI "engag[ed] in a uniform policy and systematic scheme of wage abuse against their salary paid employees in California. This scheme involved, inter alia, misclassifying the salaried restaurant employees as 'exempt' managerial/executive employees for purposes of the payment of overtime compensation when, in fact, they were 'non-exempt' non-managerial employees according to California law." CAI thus deprived its salaried employees of compensation for hours worked in excess of 40 hours per week. Additionally, CAI "denied the salaried restaurant employees mandated meal and rest breaks under California law." Martinez sought declaratory and injunctive relief, as well as restitution.

About December 14, 2007, Martinez served CAI with its first set of special interrogatories. At issue here are three of these special interrogatories. Interrogatory No. 33 asks CAI to "**IDENTIFY** each **CLASS MEMBER.**" "Class member" is defined as "any person who was and/or is employed in any restaurants owned, operated, and/or acquired by [CAI] in the State of California in a salaried restaurant position between September 7, 2003, and the present date." Identification of the class members includes providing their names, addresses and telephone numbers.

Interrogatory No. 34 asks that if CAI "contend[s] that this action is not appropriate for class certification then please state all facts that support [CAI's] contention." Interrogatory No. 36 asks CAI to "**IDENTIFY EACH PERSON** who has knowledge of the facts set forth in response to Interrogatory Number 34."

CAI filed its answer to Martinez's complaint about February 28, 2008. In addition to denying the allegations of the complaint, CAI set forth a number of affirmative defenses. Among these were allegations that the case was not appropriate for class certification.

Thereafter, about March 7, 2008, CAI objected to all three interrogatories on numerous grounds. One ground was that the interrogatories sought "confidential and private information."

Martinez filed a motion to compel further responses to his special interrogatories about March 25, 2008. This motion was based on CAI's "refusal to

disclose the identities of witnesses, including the names and contact information of the putative class members." Martinez argued that this information was necessary to meeting his burden of proving class certification was appropriate, he was entitled to the information, and production of the information would not violate the witnesses' right to privacy.

CAI filed opposition to Martinez's motion about April 17, 2008. It argued that Martinez was not entitled to discovery of the names and contact information of its employees. It argued that its employees had a heightened expectation of privacy as to their contact information based on forms they signed regarding release of their contact information. Based on this heightened expectation of privacy, CAI claimed, if the court were to consider disclosure of the employees' contact information, it should do so subject to an "opt in" notice requirement. That is, the employees would be contacted and only those who chose to "opt in" to the lawsuit would have their contact information disclosed to Martinez.[2]

In support of its opposition to Martinez's motion, CAI submitted copies of its release forms. These forms read:

## "RELEASE OF CONTACT INFORMATION

"From time to time, Joe's Crab Shack (the 'Company') may be asked to provide your contact information, including your home address and telephone number, to third parties. The Company may be asked to provide such information in the context of legal proceedings, including class action lawsuits.

"We understand that many employees may consider this information to be private and may not want it released. Accordingly, please indicate whether you consent to the disclosure of your contact information by marking the appropriate box.

"☐ No, I do not consent to the Company's disclosure of my contact information to third parties.

"☐ Yes, I consent to the Company's disclosure of my contact information to third parties.

"☐ I would like to be asked on a case-by-case basis whether I consent to the disclosure of my contact information to a particular third party, and my contact information should only be provided if I affirmatively consent in writing."

---

[2] The other alternative is an "opt out" notice, where all employees would receive notice and be given the opportunity to "opt out" of the litigation.

At the bottom of the release forms was the following: "NOTE: Your response does not create a guarantee that the Company will not release your contact information as circumstances may require or warrant it. For instance, the Company may be required or compelled by law to disclose your contact information, regardless of whether you consent to such disclosure, or it may determine that it must do so should it determine that you are a witness in a lawsuit or should it be requested by law enforcement officers. In such an event, the Company cannot be held responsible for disclosing this information even if you have not consented to disclosure or asked for a case-by-case determination of disclosure."

CAI included 19 forms on which the employees checked the first box, indicating they did not want their contact information disclosed, and 17 forms on which the employees checked the third box, indicating they wanted to consider disclosure on a case-by-case basis. These forms were signed between January 24, 2008, and April 8, 2008. According to the declaration of Michael Anders, CAI's director of human resources, most of the salaried employees in California either did not want their contact information disclosed or wanted to consider disclosure on a case-by-case basis. "Only a few" said that CAI could release their contact information.

In response, Martinez argued that an "opt out" procedure should be used. In order to prevent abuse of the employee information, Martinez stated that he was willing to enter into a protective order.

Prior to the April 30, 2008 hearing, the trial court issued its tentative ruling. It stated that the motion was "[g]ranted on the grounds set forth in the moving papers. This court has weighed the privacy interests of potential class members against the compelling need for discovery of their names and contact information, and finds that plaintiffs are entitled to the requested information subject to an 'opt-out' notice, which shall be issued by [CAI]."[3]

At the hearing, the parties argued their positions. In discussing the "opt out" alternative, the parties discussed having CAI contact their employees and give them the "opt out" option. Those who did not opt out would have their contact information given to Martinez. The trial court did not issue a final ruling orally at the hearing.

---

[3] The trial court also granted CAI's request for judicial notice in connection with its opposition to the motion to compel. CAI sought judicial notice of an April 10, 2008 trial court order in *Sanchez v. Cedar Creek Inn Corp.* (Super. Ct. Orange County, No. 07CC01301). The order addressed a motion to compel disclosure of employees' contact information. CAI requests that we also take judicial notice of this order. We decline to do so. The order has no precedential value (*Santa Ana Hospital Medical Center v. Belshé* (1997) 56 Cal.App.4th 819, 831 [65 Cal.Rptr.2d 754]), and judicial notice cannot be used to impart to it value it does not have.

Thereafter, by minute order, the trial court ruled that the motion was "[g]ranted on the grounds set forth in the moving papers. The court has signed plaintiff's proposed order." The order the court signed required CAI to provide Martinez with "[e]ach putative class member's name, residence address, residence telephone number, occupation, business address, and telephone number. (Class member means any person who was and/or is employed in California in a salaried restaurant position for [CAI] for any period of time within four years preceding the filing of the Complaint in this action up to the present date)."

CAI then filed an ex parte application to clarify the trial court's order and to stay the order pending the filing of a petition for writ of mandate. Specifically, CAI sought to have the trial court "clarify its reason for determining that the putative class members are not entitled to any notice or other protection of their privacy rights" prior to disclosure of their contact information to Martinez.

At the May 8, 2008 hearing on the ex parte application, the trial court explained that "essentially what I thought I was doing is ordering [CAI] to provide the contact information and that [Martinez's] counsel contact these people irrespective of any things that might be in their file saying they did not wish to be contacted or in some limited way would not—do not wish to be contacted. [¶] Because it appears to me that many of those forms that people fill out are—for example, they don't want telemarketers to contact them—I don't think there's anything specific that the employees were told that I don't want anybody to contact me regarding possible legal protection of our rights or something along those lines. . . ." The court declined CAI's request to explain its "detailed thought process." CAI's counsel complained that "the debate . . . that we had last week wasn't a debate about whether there should be a notice. The debate that we had was whether it should be an opt in or an opt out. So we are very confused as to how you got there. . . ."

The trial court questioned Martinez's counsel about what he would do with the contact information obtained from CAI. Counsel explained options for contacting the employees, adding, "We don't intend to bother people that don't want to be bothered." After further discussion, the trial court denied CAI's ex parte application with the understanding that CAI was going to file a petition for writ of mandate in this court.

While these proceedings were taking place, about April 25, 2008, Martinez filed a motion to compel further responses to interrogatories and production of documents. This motion included a request to compel CAI to provide the identity of witnesses. CAI opposed the motion, again raising the claim that the employee contact information was protected by the right to privacy.

In its tentative ruling, the trial court denied the motion in part and granted it in part, including granting the motion as to the requests for contact information. Following the May 19, 2008 hearing on the motion, the trial court adopted its tentative as the final ruling on the motion.

On May 29, 2008, CAI filed the instant petition for writ of mandate.

## DISCUSSION

*Standard of Review*

Interlocutory review of discovery orders by writ of mandate " 'is the only adequate remedy where a court orders production of documents which may be subject to a privilege, "since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure." ' " (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 [19 Cal.Rptr.3d 324].) "We review discovery orders for an abuse of discretion. [Citation.] Under this standard, a trial court's ruling on a discovery motion 'will be overturned upon a prerogative writ if there is no substantial basis for the manner in which trial court discretion was exercised or if the trial court applied a patently improper standard of decision.' [Citation.]" (*Ibid.*)

*The* Puerto *Decision*

We recently addressed the conflict between the right to discovery and the right to privacy in a class action suit by employees against their employer in *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242 [70 Cal.Rptr.3d 701]. In *Puerto*, petitioners sued their former employer, Wild Oats Market, alleging wage and hour violations. By interrogatory, petitioners sought to discover the contact information of witnesses. Wild Oats produced a list of names but objected to production of contact information, in part based on the right to privacy. Petitioners filed a motion to compel. The trial court granted the motion with instructions that the parties develop a procedure whereby the witnesses would be notified of the request for contact information and would have to consent in writing to the disclosure of their information. The parties agreed to, and the trial court approved of, having a third party administrator notify the witnesses and give them the opportunity to opt in to the litigation. Petitioners then sought to have this court determine whether this procedure should be rejected in favor of disclosure of the requested contact information with appropriate safeguards to protect the witnesses' privacy. (*Id.* at pp. 1245–1247.)

■ We began our discussion of the case with Code of Civil Procedure section 2017.010, which provides a broad right to discover any relevant

information that is not privileged, including the identity and location of witnesses. (*Puerto v. Superior Court, supra*, 158 Cal.App.4th at p. 1249.) We explained that "[t]he 'expansive scope of discovery' [citation] is a deliberate attempt to 'take the "game" element out of trial preparation' and to 'do away "with the sporting theory of litigation—namely, surprise at the trial." ' [Citations.]" (*Ibid.*) Therefore, discovery statutes are broadly construed in favor of discovery whenever possible in order to aid the parties in preparation for trial. (*Ibid.*)

We emphasized that "[c]entral to the discovery process is the identification of potential witnesses. 'The disclosure of the names and addresses of potential witnesses is a routine and essential part of pretrial discovery.' [Citation.] Indeed, our discovery system is founded on the understanding that parties use discovery to obtain names and contact information for possible witnesses as the starting point for further investigations . . . ." (*Puerto v. Superior Court, supra*, 158 Cal.App.4th at pp. 1249–1250.)

■ We noted, however, that while the right to discovery is very broad, it "is not absolute, particularly where issues of privacy are involved. The right of privacy in the California Constitution (art. I, § 1), 'protects the individual's *reasonable* expectation of privacy against a *serious* invasion.' " (*Puerto v. Superior Court, supra*, 158 Cal.App.4th at p. 1250, quoting *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 370 [53 Cal.Rptr.3d 513, 150 P.3d 198].) The court must balance the public need against the weight of the privacy right. (*Puerto, supra*, at p. 1250.) This "requires a careful evaluation of the privacy right asserted, the magnitude of the imposition on that right, and the interests militating for and against any intrusion on privacy." (*Ibid.*) In conducting this evaluation, we must determine whether the person claiming the privacy right has a " 'legally protected privacy interest' "; whether the person has a "reasonable expectation of privacy under the particular circumstances, including the customs, practices, and physical settings surrounding particular activities"; and whether the invasion of privacy is serious rather than trivial. (*Id.* at pp. 1250–1251.)

Applying this analysis to the case before us, we stated that Wild Oats's employees "unquestionably ha[d] a legitimate expectation of privacy in their addresses and telephone numbers." (*Puerto v. Superior Court, supra*, 158 Cal.App.4th at p. 1252.) This information was given to Wild Oats as a condition of employment and "with the expectation that [the information] would not be divulged externally except as required to governmental agencies or to benefits providers. This is a reasonable expectation in light of employers' usual confidentiality customs and practices." (*Ibid.*)

While contact information generally is considered private, this "does not mean that the individuals would not want it disclosed under these circumstances." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at pp. 1252–1253.) While employees would not likely want their contact information broadly disseminated, this does not mean they would want it withheld "from plaintiffs seeking relief for violations of employment laws in the workplace that they shared." (*Id.* at p. 1253.) Rather, employees similarly situated to petitioners "may reasonably be supposed to want their information disclosed to counsel whose communications in the course of investigating the claims asserted in [petitioners'] lawsuit may alert them to similar claims they may be able to assert." (*Ibid.*)

In considering the seriousness of the invasion of privacy, we concluded that the trial court's implicit finding "that a serious invasion of privacy would result unless an opt-in notice was used," was "unsupported by facts or law." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1253.) We observed that "the requested information, while personal, [was] not particularly sensitive, as it [was] merely contact information, not medical or financial details, political affiliations, sexual relationships, or personal information." (*Ibid.*) The employees had been identified by Wild Oats as witnesses; contact information for witnesses ordinarily is produced during discovery, and "it is neither unduly personal nor overly intrusive." (*Id.* at p. 1254.) We concluded that there was "no evidence that disclosure of the contact information for these already identified witnesses [was] a transgression of the witnesses' privacy that [was] 'sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.' " (*Ibid.*, quoting *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37 [26 Cal.Rptr.2d 834, 865 P.2d 633].)

We observed that "it is only under unusual circumstances that the courts restrict discovery of nonparty witnesses' residential contact information." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1254.) These circumstances include where disclosure of the information violates the right to privacy and is unnecessary to the prosecution of the litigation or where it may endanger the witnesses. (*Id.* at pp. 1254–1255.)

We added that the extent of the privacy invasion in the case before us probably appeared significant to the trial court due to the number of employees involved. Had there been a smaller number, we doubted that the trial court would have entered a protective order requiring a third party administrator to send notice to the witnesses. (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1255.)

We noted that "[t]he Supreme Court held in *Pioneer [Electronics (USA), Inc. v. Superior Court], supra,* 40 Cal.4th at page 373, that when the court

concludes that there is no serious invasion of privacy no balance of opposing interests is required." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1256.) We nonetheless performed that balance, finding it reinforced our conclusion that the trial court abused its discretion in requiring the "opt in" procedure. (*Ibid.*)

On the discovery side of the scales, we pointed out that "the fundamental public policy underlying California's employment laws is implicated here, suggesting that the balance of opposing interests tips toward permitting access to relevant information necessary to pursue the litigation. [Citation.] Also at stake is the 'general public interest in " ' "facilitating the ascertainment of truth in connection with legal proceedings" ' " [citation] and in obtaining just results in litigation [citation].' " (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1256.)

Considering this latter interest, we opined that "the opt-in system imposed by the trial court significantly advantage[d] Wild Oats by greatly increasing the likelihood that it [would] be able to 'retain for its own exclusive use and benefit the contact information' [citation] of potential witnesses to petitioners' claims." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1256, fn. omitted.) While Wild Oats would have easier access to the witnesses, some of whom undoubtedly would have been willing to participate with petitioners in the litigation, petitioners would be unnecessarily hamstrung in the conduct of discovery "by making their statutory entitlement to percipient witness discovery entirely dependent on the unreviewable decision of third parties whether they are interested in participating. Generally, witnesses are not permitted to decline to participate in civil discovery, even when the information sought from them is personal or private." (*Id.* at pp. 1256–1257, fn. omitted.) Use of the "opt in" notice not only would allow witnesses not to participate, but it imposed on them no obligation to respond or assert their privacy rights, with their failure to respond being interpreted as a denial of consent. (*Id.* at p. 1257.)

We noted that "[t]he trial court articulated no justification for placing in the hands of witnesses absolute and unreviewable veto power over petitioners' access to contact information to permit them to pursue legitimate discovery into their civil claims . . . ." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1259.) After performing a privacy analysis, we saw no basis for providing this level of protection to the witnesses' contact information. (*Ibid.*) We added that the Supreme Court "observed that employing opt-in mechanisms to protect the constitutional right to privacy endangers the ability to prosecute socially important claims . . . ." (*Ibid.,* citing *Pioneer Electronics (USA), Inc. v. Superior Court, supra,* 40 Cal.4th at p. 374.) Additionally, the trial court was not without the ability to enter a protective order limiting the

dissemination of the witnesses' contact information. (*Puerto, supra,* at p. 1259.) It could require petitioners to keep the information confidential and, if it learned of discovery abuse, limit the ways in which petitioners contacted the witnesses. (*Ibid.*; cf. *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 296–300 [135 Cal.Rptr.2d 90].)

We concluded that the procedure selected by the trial court, use of the "opt in" letter, "effectively gave more protection to nonparty witnesses' contact information than the Discovery Act gives to much more sensitive consumer or employment records. We are aware of no logic or authority that would justify such disproportionate protection of this private but under these circumstances relatively nonsensitive information." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1259.) We therefore found the trial court's order to be an abuse of discretion. (*Ibid.*)

*Application to the Instant Case*

There are two significant differences between *Puerto* and the instant case. First, in *Puerto*, the employer voluntarily disclosed the identities of the witnesses but sought to protect addresses and telephone numbers. Here, CAI seeks to protect identities as well as addresses and telephone numbers. Second, in *Puerto* there was no release form like the one utilized by CAI.

We attach no great significance to the fact that CAI did not voluntarily disclose the identities of the witnesses whose contact information it sought to protect. As noted in *Pioneer Electronics (USA), Inc. v. Superior Court, supra,* 40 Cal.4th at page 373, "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations.] Such disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information . . . ." Disclosure of witnesses' identities involves no greater invasion of privacy or revelation of personal information than the disclosure of their addresses and telephone numbers. Therefore, we can find no rationale for refusing to apply our holding in *Puerto* to the instant case.

Indeed, since our decision in *Puerto*, we have upheld the right of an employee to obtain contact information in order to identify potential class members. In *Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325 [83 Cal.Rptr.3d 241], plaintiff sought to bring a class action lawsuit alleging improper reclassification of class members from employees to independent contractors. The trial court denied plaintiff's motion to compel discovery of the contact information of potential class members. (*Id.* at pp. 1330–1331.) We held this to be an abuse of discretion relying on *Puerto* and other recent

cases holding that this type of discovery should not be restricted unless the trial court is able to identify privacy concerns or potential discovery abuses which outweigh the plaintiff's right to discovery. (*Id.* at p. 1338.)

This brings us to the key question in this case: the effect of the release forms. CAI argues that these forms gave their employees a heightened expectation of privacy in their contact information, requiring that the contact information be given greater protection and making an "opt in" notice procedure proper. We are unconvinced by this argument.

We first address the question whether, as a matter of public policy, we should enforce a release form that may have the effect of waiving an employee's right to notice of a pending class action lawsuit concerning the employer's alleged violations of overtime and wage statutes. While not determinative, the Supreme Court's recent opinion in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] is instructive. In *Gentry* the court addressed the question "whether class arbitration waivers in employment arbitration agreements may be enforced to preclude class arbitrations by employees whose statutory rights to overtime pay [under the Labor Code] allegedly have been violated." (*Id.* at p. 450.) The court noted the Legislature through its enactment in the Labor Code established " ' "a clear public policy" ' " that "minimum wage and overtime laws should be enforced in part by private action brought by aggrieved employees." (*Id.* at p. 455.) So great is the public policy protecting employees' right to overtime compensation that the right is "unwaivable." (*Ibid.*)

The question the court had to consider was "whether a class arbitration waiver would lead to a de facto waiver of statutory rights, or whether the ability to maintain a class action or arbitration is 'necessary to enable an employee to vindicate . . . unwaivable rights in an arbitration forum.' " (*Gentry v. Superior Court, supra,* 42 Cal.4th at p. 457.) The court concluded that under certain circumstances, a class arbitration waiver would result in a de facto waiver of statutory rights "and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws." (*Ibid.*)

The court observed that class arbitration waivers in wage and overtime cases would frequently exculpate employers for violations and undermine the enforcement of wage and overtime laws. (*Gentry v. Superior Court, supra,* 42 Cal.4th at p. 457.) First, violation of these laws usually involves lower income employees and modest individual awards. (*Id.* at pp. 457–458.) Their potential recoveries may be too small to warrant individual litigation, in that the costs of litigation often would exceed the amount of recovery. (*Id.* at pp. 458–459.)

Second, current employees suing their employers run a greater risk of retaliation. (*Gentry v. Superior Court, supra*, 42 Cal.4th at p. 459.) For them, individual litigation may not be a viable option. (*Ibid.*) Courts "have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation." (*Id.* at p. 460.)

Third, employees may be unaware of the violation of their rights and their right to sue. (*Gentry v. Superior Court, supra*, 42 Cal.4th at p. 461.) Specifically, they "may not be aware of the nuances of overtime laws with their sometimes complex classifications of exempt and nonexempt employees. [Citation.] The likelihood of employee unawareness is even greater when . . . the employer does not simply fail to pay overtime but affirmatively tells its employees that they are not eligible for overtime." (*Ibid.*)

Given these considerations, the Supreme Court concluded that " 'class actions may be needed to assure the effective enforcement of statutory policies even though some claims are large enough to provide an incentive for individual action. While employees may succeed under favorable circumstances in recovering unpaid overtime through a lawsuit or a wage claim filed with the Labor Commissioner, a class action may still be justified if these alternatives offer no more than the prospect of "random and fragmentary enforcement" of the employer's legal obligation to pay overtime.' [Citation.]" (*Gentry v. Superior Court, supra*, 42 Cal.4th at p. 462.) The class action not only benefits the individual employee but also " 'serves the public interest in the enforcement of legal rights.' " (*Ibid.*)

The court did not state "categorically that all class arbitration waivers in overtime cases are unenforceable." (*Gentry v. Superior Court, supra*, 42 Cal.4th at p. 462.) It did state, however, that "when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration." (*Id.* at p. 463.) If these factors weigh in favor of class arbitration, the trial court must invalidate the class arbitration waiver. (*Ibid.*)

*Gentry* highlights the importance placed on the rights of employees to bring class action lawsuits to enforce their statutory rights to overtime pay. So high is the importance of these rights that courts may invalidate contractual provisions that infringe upon them.

*Gentry* also highlights the dangers of placing in the employer's hands the responsibility for notifying employees of the pending litigation and requiring employees to opt in to the litigation. Current employees may decline to opt in to the litigation for fear of retaliation by their employer. This in turn could immunize the employer from liability for violation of statutory wage and overtime requirements. This would violate the public policy protecting employee rights.

■ The public policy concerns expressed in *Gentry* weigh against enforcing a release form that may have the effect of waiving an employee's right to notice of a pending class action lawsuit concerning the employer's alleged violations of overtime and wage statutes. *Gentry* did not stop its analysis with public policy concerns, however.

In addition to examining the class arbitration waiver as it affected unwaivable statutory rights, *Gentry* also examined the waiver in terms of procedural unconscionability. (*Gentry v. Superior Court, supra,* 42 Cal.4th at p. 467.) The Supreme Court stated that because the rights at issue were unwaivable, "the minimal requirements imposed on arbitration agreements to ensure their vindication cannot be waived by the employee in a prelitigation agreement." (*Ibid.*) Rather, "such waiver could only occur 'in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement *after a dispute has arisen.* In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights. Absent such freely negotiated agreements, it is for the courts to ensure that the arbitration forum imposed on an employee is sufficient to vindicate his or her rights . . . .' " (*Ibid.*)

The dates on the release forms here indicate that they were entered into after the litigation was filed. However, there is nothing in the record to suggest that the employees who indicated they did not want their contact information disclosed to third parties, or they wanted to consider disclosure on a case-by-case basis, did so knowingly, that is, with knowledge of the pending litigation and the fact the release form would affect their ability to be included in the class.

The language of the release forms was not sufficient to apprise employees that by checking the "no" box they were declining to have their contact information released to "plaintiffs seeking relief for violations of employment laws in the workplace that they shared." (*Puerto v. Superior Court, supra,* 158 Cal.App.4th at p. 1253.) The release forms stated that CAI "may be asked to provide such information in the context of legal proceedings, including class action lawsuits." We do not believe that a lay employee reading this language would realize that the reference to "class action lawsuits" meant lawsuits

intended to vindicate their rights, rather than lawsuits by third parties against CAI that would be of no benefit to the employees.

Thus, we cannot assume that employees opting not to have their contact information released, or opting to have it released on a case-by-case basis, "would not want it disclosed under these circumstances." (*Puerto v. Superior Court, supra*, 158 Cal.App.4th at pp. 1252–1253.) While they clearly do not want their contact information broadly disseminated to third parties, this does not mean they would want it withheld "from plaintiffs seeking relief for violations of employment laws in the workplace that they shared." (*Id.* at p. 1253.) Rather, they "may reasonably be supposed to want their information disclosed to counsel whose communications in the course of investigating the claims asserted in [the Martinez] lawsuit may alert them to similar claims they may be able to assert." (*Ibid.*)

Another factor to consider is the note at the bottom of the release forms. It apprises the employees that their negative responses would not "create a guarantee that the Company will not release your contact information as circumstances may require or warrant it. For instance, the Company may be required or compelled by law to disclose your contact information, regardless of whether you consent to such disclosure, or it may determine that it must do so should it determine that you are a witness in a lawsuit or should it be requested by law enforcement officers. . . ."

In other words, any "heightened" expectation of privacy the employees may have does not extend to situations in which CAI is required by law to disclose their contact information, including in the course of litigation. Reading the note in the context of the release form as a whole (cf. *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 525 [132 Cal.Rptr.2d 151]), an employee reasonably would interpret the form to mean that checking the "no" box meant that CAI would not provide employee contact information to third parties seeking it for use "in the context of legal proceedings, including class action lawsuits," unless compelled to do so by law. The trial court's order here, compelling CAI to provide employee contact information in response to Martinez's interrogatories, would fall within this exception to nondisclosure.

The balance between an employee's expectation of privacy and a party's right to discovery was recently examined by Division Eight of this court in *Alch v. Superior Court* (2008) 165 Cal.App.4th 1412 [82 Cal.Rptr.3d 470], review denied October 28, 2008. *Alch* involved a class action lawsuit by television writers against various networks, studios and talent agencies, alleging age discrimination. (*Id.* at p. 1417.) The plaintiffs sought personal information about Writer's Guild members, including nonparty writers. Notice was sent out to all persons whose information was requested, and they

were given the opportunity to object to disclosure of some or all of the requested information. The recipients also were notified that a court order could be sought to compel the disclosure of the information. Of the approximately 47,000 recipients of the notice, about 7,700 objected to disclosure. (*Id.* at p. 1418.) The plaintiffs moved to overrule the objections, and the trial court denied the motion. (*Id.* at p. 1419.)

The Court of Appeal granted the plaintiffs' petition for writ of mandate, directing the trial court to order disclosure of the information. (*Alch v. Superior Court, supra*, 165 Cal.App.4th at pp. 1420–1421.) The court concluded that providing the information requested constituted a serious invasion of a reasonable expectation of privacy. (*Id.* at p. 1426.) However, the plaintiffs "demonstrated that the information requested [was] 'directly relevant' to their claims and 'essential to the fair resolution' of their lawsuit." (*Id.* at p. 1427.) The court concluded that the trial court abused its discretion when it found that the nonparties' privacy interests outweighed the plaintiffs' need for evidence to prove their case without examining the various types of information requested and balancing the sensitivity of the information against its need in the litigation. (*Id.* at pp. 1431–1439.) The court therefore ordered the trial court to vacate its order denying the plaintiffs' motion and directed it to enter a new order granting access to the requested information to the extent set forth in the Court of Appeal's opinion. (*Id.* at p. 1440.)

In *Alch*, the expectation of privacy was, if anything, greater than the expectation of privacy here, in that the nonparties requesting nondisclosure of their personal information did so with knowledge of the pending litigation. Nevertheless, disclosure was ordered based on the need for the information as balanced against the sensitivity of the information.

█ We conclude that the release forms utilized by CAI do not compel a different result than in *Puerto* for two reasons. First, public policy concerns weigh in favor of enforcing unwaivable statutory wage and overtime rights through class action litigation over a right to privacy in "relatively nonsensitive [contact] information." (*Puerto v. Superior Court, supra*, 158 Cal.App.4th at p. 1259.)

Second, to the extent the right to privacy is based on the release forms, there are strong reasons for not giving effect to those forms. Employees indicating that they did not want their contact information disclosed, or wanted disclosure on a case-by-case basis, were unaware at the time they signed the forms of the pending litigation to enforce their statutory wage and overtime rights through a class action lawsuit. We may presume that, had they known about the litigation, their response on the form would have been different. Additionally, the forms apprised them that their contact information

could be disclosed if required by law, so they were aware of the limitation on privacy offered by the forms.

■ Under *Puerto*, the procedure chosen by the trial court was appropriate. The violation of the employees' right to privacy did not outweigh Martinez's right to discovery.

## DISPOSITION

The petition for writ of mandate is denied. Real party in interest is to recover costs.

Perluss, P. J., and Zelon, J., concurred.

A petition for a rehearing was denied January 23, 2009, and petitioner's petition for review by the Supreme Court was denied March 18, 2009, S170370.