Filed 1/8/16  Simonyan v. Tiffany & Co. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KHOREN SIMONYAN, | B255427 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC465034) |
| v. | |
| TIFFANY & CO. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Gusdorff Law and Janet Gusdorff; Law Offices of Maryann P. Gallagher and Maryann P. Gallagher for Plaintiff and Appellant.

Glaser Weil Fink Howard Avchen & Shapiro, Elizabeth G. Chilton and Kerry Garvis Wright for Defendants and Respondents.

# I. INTRODUCTION

Plaintiff, Khoren Simonyan, appeals from a February 28, 2014 judgment in favor of defendants, Tiffany and Company (the employer), Jodie Tucker and Paige Pomerantz. Plaintiff contends the trial court abused its discretion by refusing to consider his counsel's unsigned declaration submitted in opposition to defendants' summary judgment motion. In addition, plaintiff argues the trial court erred in granting summary adjudication on his age discrimination claim. Plaintiff also challenges the following discovery, sanction and sealing orders: November 5 and December 20, 2012 orders limiting discovery of "Pension Plus," an early retirement plan, to the Southwest region; November 5, 2012 order denying plaintiff's motion to compel the deposition of the employee most qualified to testify regarding the Pension Plus program; December 20, 2012 order imposing $5,000 in sanctions against plaintiff; March 14, 2013 orders denying plaintiff's various motions to compel and imposing $6,000 in sanctions against plaintiff and his attorney; March 14, 2013 order granting defendants' motion to seal documents; and January 23, 2014 order granting defendants' motion to seal confidential information. We affirm the judgment and discovery, sanction and sealing orders.

# II. FACTS

In 1980, plaintiff was hired by the employer to work as a merchandise coordinator at the Beverly Hills store. In 2005, plaintiff voluntarily transferred to the new Pasadena store so he could work closer to home. At the Pasadena store, he took a new position as a customer service coordinator. Plaintiff disputes he received month-long training for the customer service coordinator position. At the Pasadena store, plaintiff's supervisors were Ms. Tucker, manager of operations, and Ms. Pomerantz, store director.

On May 11, 2006, plaintiff was issued an advisory memorandum for poor attendance. He received an advisory memorandum for poor performance on January 18, 2007. On June 7, 2007, plaintiff was transferred from the position of customer service

coordinator to shipping and receiving coordinator.  In February 2009, plaintiff's title was changed to operations assistant.

In 2008, the employer offered the aforementioned voluntary early retirement plan entitled Pension Plus to qualified employees.  To qualify, an employee must be at least 50 years of age with 10 or more service years.  In the alternative, the employee could qualify for Pension Plus if she or he was 60 years of age with 5 or more service years.  Plaintiff did not accept the employer's Pension Plus offer.  On October 21, 2009, plaintiff was issued an advisory memorandum listing seven performance errors from August 1 through October 2009.  On November 30, 2009, Ms. Tucker and Ms. Pomerantz had a "touch-base" meeting with plaintiff to discuss his performance issues.

On January 4, 2010, Ms. Tucker e-mailed human resources manager Marilyn Douglass:  "Paige and I have had performance issues with [plaintiff] that we've documented since our conversation with [plaintiff] in November.  Should we add them to the documents cited or can we use them to terminate him?"  Ms. Douglass replied, "They should [be added] to the doc because we need a warning in effect to term[inate] and if the other issues took place before the warning they should be added."  On January 5, 2010, plaintiff received a written warning during a meeting with Ms. Tucker and Ms. Pomerantz.  The written warning listed incidents of poor performance between October 28 and December 17, 2009.  The next day plaintiff went on a week-long vacation.  After vacation, plaintiff went on short-term disability leave from January 16 to April 19, 2010.  Subsequently, plaintiff's employment was terminated on May 18, 2010.

## III.  PROCEDURAL HISTORY

### A.  Complaint

On July 8, 2011, plaintiff sued defendants for:  age discrimination; disability discrimination; wrongful termination in violation of public policy; intentional emotional distress infliction; breach of implied covenant not to terminate except for good cause; and

3

defamation. For the age discrimination claim, the complaint alleges defendants targeted plaintiff for termination because they wanted to get rid of older long-term employees and replace them with younger workers. Plaintiff is over the age of 50 and asserts his age was a motivating and substantial factor in his termination. The complaint alleges defendants created a false reason to terminate him a few months before he reached his thirtieth anniversary of service with the employer. Plaintiff was allegedly eligible for lifetime medical insurance and other benefits after 30 years of service. The complaint states: "Plaintiff believes he was one of many long term, loyal workers over the age of 50, who was terminated in a pattern by [defendants] to take advantage of the dip in the economy to claim they were laying off workers when really what they were doing was trying to save money by replacing the older more experienced workers who had earned higher pay rates with younger, less experienced workers who worked for cheaper pay rates. The [defendants] made up a pretextual reason for plaintiff's termination."

## B. Discovery and Sanction Orders

In February 2012, plaintiff requested documents relating to Pension Plus in his second set of document requests. Plaintiff sought information concerning how many employees were offered Pension Plus, refused the plan and were subsequently terminated. In addition, plaintiff sought all communications regarding the results of the Pension Plus offering and what would be done with employees who decided not to take the plan. On October 29, 2012, plaintiff moved to compel responses to his production demand.

At the November 1, 2012 hearing, plaintiff requested a companywide list of employees who were offered Pension Plus, declined the benefit and were later fired. Plaintiff asserted Ms. Douglass testified such a list existed. Plaintiff cited to the following deposition testimony by Ms. Douglass: "Q. And would you have access to a list of all the employees companywide at [the employer] who were offered the Pension Plus Plan but who declined and were later terminated? A. Yes." The trial court

4

reviewed Ms. Douglass's deposition testimony and found it ambiguous. The trial court explained: "I take her yes to mean, sure, I could come up, with that information if I had [to]. I don't think she is necessarily interpreting this to mean a list." The trial court reasoned: "I supposed if there were a list and it was just a matter of handing it over that would be one thing, and I can order [defendants] to provide a declaration clarifying this. But the way I took her testimony, and it made sense to me, why would a company keep a list of who they fired based on not taking early retirement. Unless they really did in which case you would think they would cover their tracks[,] decide to fire everybody who didn't take it. It doesn't make sense. [¶] Why would anybody keep that data in a single list. There is no purpose for it." To resolve the dispute, the trial court ordered Ms. Douglass to provide a clarifying declaration. Ms. Douglass was ordered to answer whether a companywide list could be generated showing employees who declined Pension Plus and were later terminated.

Rather than a companywide list, defendants provided a list of 76 employees who were offered Pension Plus in the Southwest region. The Southwest region covers 18 stores and includes the Pasadena location. Of the 21 employees who declined the Pension Plus offer, 3 employees, including plaintiff, later lost their jobs. The two other employees were laid off after their jobs were eliminated as a part of a reduction in force.

The trial court limited production of documents relating to Pension Plus to the Southwest region. The November 5, 2012 order states: "With respect to production of documents regarding terminated employees (Nos. 85-95), the court finds that Defendants' production of responsive documents pertaining to employees working in the employer's Southwest Region is sufficient. Plaintiff has failed to persuade the court that information regarding employees in other regions is likely to lead to the discovery of admissible evidence."

On October 26, 2012, defendants moved for a protective order after plaintiff noticed the depositions of employees responsible for Pension Plus and the person most knowledgeable about the plan. Defendants argued the deponents fell into two categories. The first category, according to defendants, consisted of "apex" employees in the

5

employer's corporate human resources department. The second category were employees who had no knowledge of plaintiff's allegations. Defendants further asserted the employer's employee who was most knowledgeable about Pension Plus had already been deposed twice. In opposition, plaintiff argued the deponents were not apex employees. He also contended defendants produced Ms. Douglass, but she was not the person most knowledgeable about Pension Plus. Ms. Douglass did not know: the Pension Plus costs; how much the employer expected to save by implementing the plan; and how much the employer actually saved. At the November 5, 2012 hearing, the trial court limited discovery to the Southwest region. The trial court found it would be unduly burdensome to require defendants to produce information nationwide. Defendants' counsel stated it took an employee six weeks to compile the list for the Southwest region. The trial court ruled, as to the Southwest region sample, there was no correlation between an employee's refusal to take Pension Plus and a subsequent adverse employment action.

Defendants also objected to plaintiff's special interrogatories, sets three and four. Plaintiff's special interrogatories, set three, sought information on: the total number of employees from 2007 to 2012; the number of employees over the age of 50 from 2007 through 2012; the number of employees offered Pension Plus; and the number of employees who declined Pension Plus who were then terminated between 2009 and the present. Plaintiff's special interrogatories, set four, requested the Bates stamped numbers for all documents relating to: the Pension Plus offer; employees who were terminated after declining to take the early retirement package; and information showing the age of the person who replaced plaintiff. Also, plaintiff sought the name and telephone number of: the employee who replaced him; the employee who took over his responsibilities after his termination; and the employees who were terminated after refusing Pension Plus.

On October 25, 2012, defendants moved for a protective order and sanctions relating to plaintiff's special interrogatories, sets three and four. Defendants argued providing plaintiff with Bates numbers for documents corresponding to request for production was onerous and burdensome. In addition, defendants argued plaintiff was

6

not entitled to confidential or private information relating to current and former employees until plaintiff agreed to the entry of a protective order. Defendants also sought monetary sanctions against plaintiff and his counsel for propounding 164 special interrogatories two months prior to trial. On November 7, 2012, plaintiff sought to compel responses to special interrogatories, sets three and four. On December 20, 2012, the trial court granted defendants' request for a protective order and denied plaintiff's motion to compel further special interrogatory answers. The trial court limited plaintiff's special interrogatories to the Southwest region. The December 20, 2012 order states: "The discovery pertained to the 600 employees in the 18 stores included in the Southwest Region and demonstrates that half of the employees who refused the Pension Plus Program remain employed; that two lost their jobs in an [reduction in force]; that Plaintiff was terminated for poor performance; and that the remainder were lost through ordinary attrition. The evidence did not support Plaintiff's disparate impact theory, i.e., that [the employer] discriminated against older workers by adopting a policy of terminating those who refused the Pension Plus Program. [¶] The court therefore remains convinced that discovery outside the Southwest Region is unduly burdensome and unlikely to lead to admissible evidence." The order adds: "The court also agrees with Defendants that there is no basis to allow special interrogatories in excess of the 35 ordinarily permitted. Except as set forth below, Defendants have no obligation to provide any further responses to the excess special interrogatories." The trial court awarded sanctions against plaintiff in the amount of $5,000.

On January 25, 2013, plaintiff moved to compel responses to special interrogatories, set five. Plaintiff requested additional information including: the age of all employees of the Pasadena store from 2010 to the present; the names of employees who had been terminated from the Pasadena store from 2009 to the present; and the last known address and telephone number of 22 named employees who worked in the Pasadena store with him. At the March 14, 2013 hearing, the trial court refused to allow plaintiff to discover these employees' contact information. The trial court explained, "Look, if you had deposed one of the witnesses whom they served up and you asked that

7

witness who else was present when [plaintiff] made this mistake on such and so date, and they said Ms. Jones was present then you would have a reason to get the information from Ms. Jones, but this is fishing." Plaintiff's counsel responded she wanted to talk to other employees at the Pasadena store to refute defendants' contention he was terminated for poor performance. The trial court replied, "If I had evidence that these people had knowledge of that, I would let you do the discovery, but I don't have any evidence of that . . . ."

Also, on January 25, 2013, plaintiff moved to compel a response to his admission requests. The admission requests concerned the authenticity of the employer's United States Securities and Exchange Commission Form 10-K reports (10-K reports) from 2009 to 2012. In addition, plaintiff moved to compel responses to plaintiff's production demand, set five. In particular, plaintiff sought production of copies of the employer's 10-K reports. At the March 14, 2013 hearing, the trial court found it would be burdensome for someone to authenticate line by line the employer's 10-K reports. The trial court ordered defendants to respond by admitting true and correct copies of the 10-K reports are on the employer's website. The trial court also imposed a total of $6,000 in monetary sanctions on plaintiff and his counsel. The monetary sanctions order consisted of $3,000 for plaintiff's motion to compel document production and an additional $3,000 for the motion to compel responses to his admission requests. Plaintiff's counsel argued the requests were not made in bad faith because she met and conferred with defendants' counsel prior to bringing the motions. The trial court responded: "I don't think the standard is bad faith. It's a fee shifting based on a fair assessment of who was the prevailing party. I cut the fees in half on two motions, and I awarded none on the third. I think that is fair."

## C. Orders Sealing Documents

The parties stipulated to a protective order regarding the production and disclosure of confidential materials on October 3, 2012. The trial court signed the protective order

8

on October 10, 2010.  The protective order defines "Confidential Materials" thusly, "[A]ny Documents, Testimony or Information designated as 'Confidential' pursuant to the provisions of this Stipulation and Protective Order and includes, but is not limited to, Information relating or referring to the address, telephone number and email address of current/or former employees of Defendant Tiffany & Co. and in particular Paige Pomerantz, which Documents, Testimony or Information has or have been designated as 'Confidential' pursuant to the provisions of this Stipulation and Protective Order."  The protective order states, "Where any Confidential Materials, or Information derived from Confidential Materials, is to be included in any motion or other proceeding governed by the California Rules of Court, Rules 2.550 and 2.551, the parties shall follow those rules."

In March 2013, defendants moved to seal purportedly confidential documents.  In particular, defendant sought to seal a five-page list of terminated employees in the Southwest region who were offered the Pension Plus option.  The employee names on the list were redacted.  Plaintiff opposed defendants' motion to seal on March 7, 2013.  In addition, plaintiff filed a motion challenging defendants' confidentiality designation of evidence and seeking the production of unredacted exhibits.  At the March 14, 2013 hearing, the trial court granted defendants' motion to seal the documents.  Plaintiff objected, arguing he would not be able to refer to the sealed documents in his summary judgment papers.  The trial court responded the order was for defendant's pending motion, "I have sealed them for this motion only."

On October 25, 2013, defendants moved for an order sealing documents lodged and filed by plaintiff on October 16, 2013.  The documents were filed in support of plaintiff's second motion to challenge the confidentiality designation of evidence and to require the production of unredacted exhibits.  At the January 23, 2014 hearing, plaintiff argued the trial court needed to make factual findings before ordering the documents sealed.  Plaintiff also contended the trial court did not have authority to seal the records based on the parties' stipulation.  The trial court ordered the documents sealed, relying on the protective order.

## D. Summary Judgment

On September 27, 2013, defendants re-filed their motion for summary judgment, which they first filed on January 28, 2013. Plaintiff filed an opposition on January 16, 2014. On January 30, 2014, the hearing on defendants' summary judgment motion was held and the matter was taken under submission. On February 4, 2014, defendants' summary judgment motion was granted.

The trial court declined to consider the January 16, 2014 declaration of plaintiff's counsel, Maryann Gallagher, because she failed to sign it. In addition, the trial court ruled the documents attached to the unsigned declaration were hearsay and thus inadmissible. The February 4, 2014 order states, "Even if the Court were to consider the unsigned Gallagher Declaration filed January 16, 2014, its reference to 'item (21) Documents from Defendant to be logged with the court,' is so vague as to be of no evidentiary value whatsoever." The order adds: "Plaintiff's Separate Statement, filed on January 17, 2014, occasionally refers to 'exhibits filed conditionally under seal,' with no additional information or specificity. This is completely unhelpful inasmuch as plaintiff has filed documents under seal on multiple occasions, including on March 5, 2013, March 19, 2013 and January 17, 2014. Plaintiff cannot presume that the Court will act as his surrogate to comb through documents to see if any supports plaintiff's arguments." The trial court ruled the only admissible evidence in plaintiff's summary judgment opposition was in Ms. Gallagher's declaration filed on January 17, 2014.

Pertinent to this appeal, the trial court granted summary adjudication of the age discrimination claim. The order states: "The admissible evidence shows that plaintiff was hired by [the employer] in 1980 to work as a merchandise coordinator in the Beverly Hills store. In 2005, plaintiff transferred to the Pasadena store in order to be closer to home. He became a customer service coordinator, then a shipping and receiving coordinator and later, an operations assistant. [¶] Plaintiff's performance reviews were mixed. On most, he was rated as 'competent' or 'meets requirements,' but on occasion he would be rated as 'exceeds requirement.' Sometimes he would be commended for his

10

'professional strengths and results.' However, plaintiff also was issued an advisory [memorandum] as early as 2006. Plaintiff received other admonishments and advisory [memoranda] in 2007, 2009 and 2010 dealing with multiple serious issues. [¶] After receiving his last warning on January 5, 2010, plaintiff went on vacation and then took disability leave through April 19, 2010. Upon his return to work, plaintiff almost immediately received a customer complaint. After another performance review, plaintiff was terminated. The primary decision-makers were Douglass, Brodkin (nee Pomerantz) and Tucker who were concerned about plaintiff's performance issues and not his age. [¶] There is no admissible direct evidence that plaintiff was terminated because of his age. Plaintiff never complained that he was being discriminated against because of his age. Plaintiff cannot recall any supervisor or other employee making comments about plaintiff's age. Plaintiff conceded in his deposition that he 'didn't know' if [the employer] was trying to replace older employees with younger employees and that he was 'not sure' why he was terminated. [¶] During oral argument, plaintiff's counsel made reference to various internal [employer] documents which purportedly demonstrated circumstantial evidence of age discrimination. However, none of those documents were attached to the late filed, but signed Gallagher Declaration filed on January 17, 2014. [¶] In sum, plaintiff has failed to introduce any competent evidence showing that he was terminated because of his age."

Judgment in defendants' favor was entered on February 28, 2014. Notice of entry of judgment was filed on March 6, 2014. Plaintiff timely filed his notice of appeal on March 28, 2014.

IV.  DISCUSSION

A.  Discovery Orders

1.  Standards of review and prejudice analysis

Generally, the trial court's discovery rulings are reviewed for abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 [order compelling production of redacted document]; *St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 772, 778 [order deeming request for admissions admitted]; *Life Technologies Corp. v. Superior Court* (2011) 197 Cal.App.4th 640, 649 [order compelling further interrogatory answers].)  A ruling is an abuse of discretion if it is so irrational or arbitrary that no reasonable person could agree with it.  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *Green v. County of Riverside* (2015) 238 Cal.App.4th 1363, 1369.)  An abuse of discretion occurs when the trial court applies the wrong legal standard.  (*Sargon Enterprises, Inc. v. University of Southern California, supra,* 55 Cal.4th at p. 773 ["To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's action.'"]; *Costco Wholesale Corp. v. Superior Court, supra,* 47 Cal.4th at p. 733.)  A reviewing court may not substitute its opinion for that of the trial court unless there is *no* legal justification for the discovery order.  (*Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at p. 649; *Alch v. Superior Court* (2008) 165 Cal.App.4th 1412, 1421.)

Further, plaintiff must show the erroneous ruling was prejudicial.  As explained by our colleagues in the Third Appellate District in *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 740:  "Because plaintiffs did not seek writ review of the trial court's denial of their motion to compel, and instead sought review only on appeal from the judgment that followed defendants' successful summary judgment motions, they must show not only that the trial court erred, but also that the error was prejudicial; i.e., they must show that it is reasonably probable the trial court would not have granted summary

judgment against them if the court had granted their motion to compel. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802 [discussing prejudicial error in civil cases].)" (Accord, *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1045.) Plaintiff has the burden to make an affirmative showing that the erroneous discovery ruling resulted in a miscarriage of justice. (*MacQuiddy v. Mercedes-Benz USA, LLC, supra,* 233 Cal.App.4th at p. 1045; *Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1197-1198.)

### 2. Limiting discovery to the Southwest region was not an abuse of discretion

Plaintiff contends the trial court's limitation of Pension Plus documents to the Southwest region was an abuse of discretion. The November 5, 2012 order states: "With respect to production of documents regarding terminated employees (Nos. 85-95), the court finds that Defendants' production of responsive documents pertaining to employees working in [the employer's] Southwest Region is sufficient. Plaintiff has failed to persuade the court that information regarding employees in other regions is likely to lead to the discovery of admissible evidence." Plaintiff further argues the trial court abused its discretion by granting defendants' protective order and limiting interrogatory responses to the Southwest region. The December 20, 2012 order states: "The discovery pertained to the 600 employees in the 18 stores included in the Southwest Region and demonstrates that half of the employees who refused the Pension Plus Program remained employed; that two lost their jobs in an [reduction in force]; that Plaintiff was terminated for poor performance; and that the remainder were lost through ordinary attrition. The evidence did not support Plaintiff's disparate impact theory, i.e., that Tiffany's discriminated against older workers by adopting a policy of terminating those who refused the Pension Plus Program. [¶] The court therefore remains convinced that discovery outside the Southwest Region is unduly burdensome and unlikely to lead to admissible evidence."

Plaintiff contends the trial court prevented him from proving his disparate impact age discrimination claim by depriving him of a statistical significant sample. A disparate

impact exists where a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, has disproportionate adverse effects on members of the protected class. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354, fn. 20; *Rosenfeld v. Abraham Joshua Heschel Day School, Inc.* (2014) 226 Cal.App.4th 886, 893; *Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at p. 649.) The employer's Pension Plus program is not a facially neutral plan because it was only offered to older workers. As noted, Pension Plus was offered to employees under two circumstances. The first circumstance involved employees who were 50 years or older with 10 or more service years. The second circumstance applied to employees who were 60 years or older with 5 or more service years. Thus, Pension Plus statistical evidence is only relevant for an age discrimination claim based on a disparate treatment theory.

At oral argument, plaintiff contends his disparate impact theory is based in part on a reduction in force implemented by the employer. But plaintiff does not allege he was laid off as part of a reduction in force. The complaint states: "Plaintiff believes he was one of many long term, loyal workers over the age of 50, who was terminated in a pattern by [defendants] to take advantage of the dip in the economy to claim they were laying off workers when really what they were doing was trying to save money by replacing the older more experienced workers who had earned higher pay rates with younger, less experienced workers who worked for cheaper pay rates. The [defendants] made up a pretextual reason for plaintiff's termination." While two other employees were laid off as part of a reduction in force subsequent to the Pension Plus offer, plaintiff was not subjected to a reduction in force. Defendants' stated reason for terminating plaintiff was for poor performance.

Plaintiff argues the trial court limited the representative sample to the Southwest region based on a factual finding that a companywide list of terminated employees did not exist. Plaintiff asserts Ms. Douglass's deposition testimony confirms she had access to a companywide list of employees who were offered the Pension Plus option, declined it and were later fired. Defendants argue plaintiff misinterprets Ms. Douglass's testimony. In the face of conflicting facts, the trial court's factual findings will be upheld

14

if they are supported by substantial evidence. (*Costco Wholesale Corp. v. Superior Court, supra,* 47 Cal.4th at p. 733; *HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 60.) At the November 1, 2012 hearing, the trial court considered Ms. Douglass's testimony and found it to be ambiguous. At her deposition, Ms. Douglass was asked the following question, "So for people that took the Pension Plus Plan, you would be able to take that list and run their names to see if any of them applied at [the employer] and were turned down?" Ms. Douglass responded: "I don't think there's a way to run the list of that to see if they were a former employee without -- I don't know it would be a reporting option or not. [¶] Everything that you're asking for is not on one document. So the termination and the Pension Plus are two different things. So those -- It's a lot of work, combining all those documents. [¶] The list of terminated employees doesn't include the list of Pension Plus employees." When asked how long it would take to develop a list of employees as requested by plaintiff, Ms. Douglass testified: "There were hundreds. So it would take weeks. [¶] . . . That's for six branches, and there's almost 100 people on there. I have 18 branches, and so does every other region. Between 12 and 18." Thus, substantial evidence supports the trial court's factual finding that defendants did not have a companywide list of employees offered Pension Plus, who declined it and were later terminated.

Also, the trial court did not abuse its discretion in limiting discovery to the Southwest region. (See *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 971 [denial of nationwide discovery of vacant positions at every store was not abuse of discretion].) Plaintiff claims he was deprived of statistically significant sample evidence because he was limited to information for the Southwest region. But the Southwest region covers 18 locations including the Pasadena store where plaintiff worked. In the Southwest region, 76 employees were offered Pension Plus. Plaintiff fails to show a sample size of 76 employees is, as a matter of law, insufficient statistical evidence. Also, the trial court could reasonably find the Southwest region sample was representative of the nationwide information. The percentage of employees who declined Pension Plus and were later involuntarily terminated through a reduction in force was 10

15

percent companywide. Likewise in the Southwest region, the percentage of employees who declined Pension Plus and were later laid off was 10 percent. Of the 21 employees who declined the Pension Plus offer, 2 employees lost their jobs through a reduction in force.

Further, plaintiff cannot demonstrate he was prejudiced by the discovery rulings limiting Pension Plus discovery to the Southwest region. For a disparate treatment case, statistical evidence alone rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for terminating an individual employee. (*Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at p. 651; *Aragon v. Republic Silver State Disposal Inc.* (9th Cir. 2002) 292 F.3d 654, 663; *Coleman v. Quaker Oats* (9th Cir. 2000) 232 F.3d 1271, 1283 ["[T]he statistics 'must show a stark pattern of discrimination unexplainable on grounds other than age.'"].) Plaintiff fails to demonstrate as a matter of law it is reasonably probable the summary judgment would have been denied had he been allowed to conduct companywide discovery. There was no error nor was it prejudicial when the trial court limited plaintiff's efforts to conduct further companywide discovery on Pension Plus related matters.

3. Protective order and denial of plaintiff's motion to compel third deposition of person most qualified regarding pension plus was not prejudicial

Plaintiff asserts the trial court abused its discretion by granting defendants' protective order and denying his motion to compel a third deposition of the person most qualified regarding Pension Plus. Plaintiff sought information on the goals, implementation and cost of Pension Plus and how much the employer expected to save by offering the plan. We need not decide whether the discovery rulings were an abuse of discretion because plaintiff has not demonstrated the requisite prejudice. Plaintiff fails to identify any evidence that might have been revealed in a third deposition about Pension Plus that would support his age discrimination claim.

16

## 4. Refusal to order further special interrogatory answers concerning Pasadena store employees was not abuse of discretion

Plaintiff challenges the denial of his motion to compel responses to his special interrogatories, set five. He sought information about workers at the Pasadena store: the employees' ages from 2010 to the present; the names of employees terminated from 2009 to the present; and the last known address and phone numbers of employees who worked with plaintiff. Plaintiff argues denial of this discovery was an abuse of discretion because he was entitled to such information. He contends employee information would have been kept confidential pursuant to the stipulation and protective order.

The trial court could properly deny plaintiff's motion to compel further special interrogatory answers because disclosure would violate the third-party employees' privacy right. First, the trial court could reasonably find plaintiff failed to show a compelling need for confidential personnel information that cannot be obtained through deposition or from nonconfidential sources. (*Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at p. 652 ["[T]he balance will favor privacy for confidential information in third party personnel files unless the litigant can show a compelling need for the particular documents *and that the information cannot reasonably be obtained through depositions or from nonconfidential sources.*"]; *Alch v. Superior Court, supra,* 165 Cal.App.4th at pp. 1425-1426.)

Second, the trial court could reasonably find plaintiff fails to demonstrate the requested information is directly relevant and essential to the fair resolution of his age discrimination claim. (*Alch v. Superior Court, supra,* 165 Cal.App.4th at p. 1427; *Crab Addison, Inc. v. Superior Court* (2008) 169 Cal.App.4th 958, 974.) Plaintiff asserts he needs information to discover how many employees were also terminated based on age. But plaintiff had already been provided with a list from the Southwest region of the former employees' ages, their job positions and the reasons they left the employer. Plaintiff also contends the information is directly relevant because these employees observed his job performance. But the trial court could reasonably conclude that

17

plaintiff's request is overbroad because he seeks information about employees from 2009 to the present. In addition, plaintiff fails to show these employees were percipient witnesses. (*Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at p. 653.) The trial court found, "If I had evidence that these people had knowledge of [plaintiff's performance issues], I would let you do the discovery, but I don't have any evidence of that . . . ."

Third, plaintiff did not propose any procedural safeguards that would provide notice to current and former employees and allow them to object to disclosure of confidential information. (*Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at pp. 654-655; *Alch v. Superior Court, supra,* 165 Cal.App.4th at p. 1418 [subpoenaed third parties provided privacy notice and objection form].) These procedural safeguards are required in addition to a protective order, which limits the use and dissemination of *disclosed* confidential information. (*Life Technologies Corp. v. Superior Court, supra,* 197 Cal.App.4th at p. 655; *Alch v. Superior Court, supra,* 165 Cal.App.4th at p. 1418.) We conclude no abuse of discretion occurred.

5. Denial of plaintiff's motions to compel production and response to admission requests concerning the 10-K reports was not prejudicial

Plaintiff argues it was an abuse to discretion to deny his motion to compel defendants to admit to the authenticity of the employer's 10-K reports. The trial court found the reports were public record but it would be "burdensome for somebody to go line by line" through the printed 10-K reports. The trial court ordered defendants to admit as true that correct copies of the 10-K reports were on the employer's website. The trial court observed, "[Defendants] run the risk if there is a mistake on the web site." Plaintiff also contends denial of his motion to compel the production of the 10-K reports was an abuse of discretion. We need not decide whether the discovery rulings were an abuse of discretion because plaintiff has not demonstrated prejudice. In opposition to defendants' summary judgment motion, plaintiff attached portions of several 10-K

18

reports.  The employer did not object to the 10-K reports' authenticity.  Plaintiff fails to show had his motions to compel been granted, defendants' summary judgment motion would have been denied.


### B.  The Sealing Orders Did Not Prejudice Plaintiff


Plaintiff argues the trial court abused its discretion by ordering documents sealed without making express factual findings as required by rule 2.550 of the California Rules of Court.[1]  (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 888-889; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 298.)  Furthermore, plaintiff contends the trial court improperly used the parties' stipulation and protective order as a basis to seal documents.  A record may not be sealed solely on the agreement or stipulation of the parties.  (Rule 2.551, subd. (a); *Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 84.)

Any error in sealing the documents is harmless.  The trial court refused to consider the sealed documents because plaintiff failed to sufficiently identify them.  The summary judgment order states:  "Plaintiff's Separate Statement, filed on January 17, 2014, occasionally refers to 'exhibits filed conditionally under seal,' with no additional information or specificity.  This is completely unhelpful inasmuch as plaintiff has filed documents under seal on multiple occasions, including on March 5, 2013, March 19, 2013 and January 17, 2014.  Plaintiff cannot presume that the Court will act as his surrogate to comb through documents to see if any supports plaintiff's arguments."  Plaintiff fails to show he is prejudiced by the sealing orders.

---

[1]     All further references to rules are to the California Rules of Court.

## C. The Monetary Sanction Orders Were Not Abuse of Discretion

The court, after notice and an opportunity for hearing, may impose sanctions for misuse of the discovery process. (Code Civ. Proc. § 2023.030**²**; *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) Misuse of the discovery process includes but is not limited to: "(c) Employing a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense. . . . [¶] (h) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery." (§ 2023.010, subds. (c) and (h); *Doe v. United States Swimming, Inc., supra,* 200 Cal.App.4th at p. 1434.) Section 2023.030, subdivision (a) states in pertinent part: "If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction *unless* it finds that the one subject to the sanction acted with *substantial justification* or that other circumstances make the imposition of the sanction unjust." (*Doe v. United States Swimming, Inc., supra,* 200 Cal.App.4th at p. 1434; *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 404, fn. 11.) Furthermore, section 2033.290, subdivision (d) provides for monetary sanctions in connection with a motion to compel further responses to requests for admission. Section 2033.290, subdivision (d) states: "The court shall impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel further response, unless it finds that the one subject to the sanction acted with substantial justification or other circumstances make the imposition of the sanction unjust." In addition, section 2030.300, subdivision (d) provides: "The court shall impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a further response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

---

**²** All further statutory references are to the Code of Civil Procedure unless otherwise specified.

Substantial justification means clearly reasonable justification that is well-grounded in both law and fact. (*Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 747; *Doe v. United States Swimming, Inc., supra,* 200 Cal.App.4th at p. 1434.) The losing party has the burden of proving substantial justification. (*Doe v. United States Swimming, Inc., supra,* 200 Cal.App.4th at p. 1435; *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878. ) The trial court's order awarding discovery sanctions is reviewed for an abuse of discretion. (*Doe v. United States Swimming, Inc., supra,* 200 Cal.App.4th at p. 1435; *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants, supra,* 148 Cal.App.4th at p. 401.)

Plaintiff challenges the December 20, 2012 order imposing $5,000 in sanctions against plaintiff. Defendants were awarded monetary sanctions after they successfully moved for a protective order and plaintiff lost his motion to compel answers to special interrogatories, sets three and four. Plaintiff also contests the imposition of $6,000 in monetary sanctions on plaintiff and his counsel. The trial court imposed monetary sanctions after plaintiff unsuccessfully moved to compel production and response to admission requests concerning the 10-K reports.

Plaintiff argues the trial court abused its discretion by imposing discovery sanctions. Plaintiff contends the trial court failed to make a finding as to whether plaintiff or his counsel acted with substantial justification. But the trial court is not required to make a specific finding that plaintiff's discovery motions and opposition were without substantial justification. (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294 ["The court need not make an explicit finding the exception does not exist as this is implied in the order awarding sanctions."]; *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 261; *Estate of Ruchti* (1993) 12 Cal.App.4th 1593, 1603.) Plaintiff further argues the trial court should have considered plaintiff's counsel's good faith efforts to informally resolve the discovery disputes. However, there is no requirement that plaintiff's conduct be found willful before imposition of a monetary sanction. (*Ellis v. Toshiba America Information Systems, Inc., supra,* 218 Cal.App.4th at p. 878; *Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1286-1287.) The plain language

of sections 2023.030, subdivision (a), 2030.300, subdivision (d), and 2033.290, subdivision (d) requires the trial court to impose a monetary sanction *unless* it finds plaintiff acted with substantial justification. (*Parker v. Wolters Kluwer United States, Inc., supra,* 149 Cal.App.4th at p. 294.) The trial court did not abuse its discretion in awarding discovery sanctions to defendants as the prevailing party.

D. The Trial Court Did Not Abuse Its Discretion by Refusing to Consider Plaintiff's Counsel's Unsigned Declaration and Attached Documents

A declaration may be used to support or oppose motions for summary judgment. (§ 437c, subd. (b)(1) & (2); *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 605-606.) A declaration is a writing that is signed, dated and certified as true under penalty of perjury. (§ 2015.5; *Kulshrestha v. First Union Commercial Corp.*, *supra*, 33 Cal.4th at p. 606.) Section 2015.5 provides: "Whenever, under any law of this state . . ., any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, *in writing of the person* making the same . . ., such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, *in writing of such person* which recites that it is certified or declared by him or her to be true under penalty of perjury, *is subscribed by him or her*, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." (Italics added.)

Plaintiff concedes his counsel, Ms. Gallagher, failed to sign her January 16, 2014 declaration. Nonetheless, he challenges the trial court's refusal to consider this declaration. We review for abuse of discretion the trial court's evidentiary rulings made on summary judgment. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181; *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

22

Plaintiff asserts the trial court excluded most of his evidence without giving him notice and allowing him to correct the defective declaration. Plaintiff contends this was an abuse of discretion, relying on *Parkview Villas Association, Inc. v. State Farm Fire and Casualty* (2005) 133 Cal.App.4th 1197, 1202. But that case is distinguishable because it involves a defective separate statement filed in opposition to a summary judgment motion. (*Parkview Villas Association, Inc. v. State Farm Fire and Casualty, supra,* 133 Cal.App.4th at pp. 1210-1215.) A separate statement provides due process to the opposing party and permits the court to focus on disputed material facts. (*Parkview Villas Association, Inc. v. State Farm Fire and Casualty, supra,* 133 Cal.App.4th at p. 1210; *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335.) A declaration provides admissible evidence to support or oppose a summary judgment motion. (§ 437c, subd. (d); *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th at pp. 609, 618.) Contrary to plaintiff's assertion, failure to sign a declaration is not a ministerial error. Under section 2015.5, an unsworn declaration must be subscribed by the declarant. (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1026 ["'Subscribe' as used in section 2015.5 means to sign with one's own hand."]; *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1222-1223.) Our Supreme Court has stated, "[C]ourts do not find compliance with section 2015.5 to be both substantial and sufficient unless all statutory conditions appear on the face of the declaration in some form." (*Kulshrestha v. First Union Commercial Corp., supra,* 33 Cal.4th at p. 612.) A declaration that fails to comply with the requirements of section 2015.5 cannot be used as an evidentiary document to support or oppose a summary judgment motion. (*Kulshrestha v. First Union Commercial Corp., supra,* 33 Cal.4th at pp. 606, 619; *Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 25, fn. 2; *Witchell v. De Korne* (1986) 179 Cal.App.3d 965, 975; *Baron v. Mare* (1975) 47 Cal.App.3d 304, 308, 312.) The trial court did not abuse its discretion in refusing to consider the unsigned declaration.

E. Summary Judgment Was Proper Because Plaintiff Did Not Raise Any Triable Issues of Material Fact

1. Summary judgment standard of review

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851, our Supreme Court described a party's burdens on summary judgment motions as follows:  "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.  That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon.  [Citation.]  There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . .  [¶]  [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact . . . .  A prima facie showing is one that is sufficient to support the position of the party in question.  [Citation.]"  (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

We review de novo the trial court's decision to grant the summary judgment motion.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 326; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.)  The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling not its rationale.  (*Coral Construction, Inc. v. City and County of San Francisco, supra,* 50 Cal.4th at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.)  A summary judgment motion is directed to the issues framed by the pleadings.  (*Conroy v. Regents of University of California* (2009) 45

24

Cal.4th 1244, 1250; *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364.) We construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in that party's favor. (*Conroy v. Regents of University of California, supra,* 45 Cal.4th at p. 1249-1250; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

### 2. Plaintiff fails to raise a triable issue of fact regarding pretext

The Fair Employment and Housing Act prohibits an employer from discriminating against an employee based on age. (Gov. Code § 12940, subd. (a).) For a disparate treatment discrimination claim, we apply the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Guz, supra,* 24 Cal.4th at p. 354; *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 964.) At trial, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. (*Guz, supra,* 24 Cal.4th at p. 354; *Swanson v. Morongo Unified School Dist., supra,* 232 Cal.App.4th at p. 964.) To establish a prima facie case, plaintiff is required to show that: he was a member of a protected class; he was qualified for the position he sought or was performing competently in the position he held; he suffered an adverse employment action, such as termination; and some other circumstance suggests discriminatory motive. (*Guz, supra,* 24 Cal.4th at p. 355; *Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 673.)

A rebuttable presumption of discrimination arises if the plaintiff establishes a prima facie case. (*Guz, supra,* 24 Cal.4th at p. 354; *Swanson v. Morongo Unified School Dist., supra,* 232 Cal.App.4th at p. 964.) The burden then shifts to the employer to rebut the presumption by producing admissible evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. (*Guz, supra,* 24 Cal.4th at pp. 355-356; *Swanson v. Morongo Unified School Dist., supra,* 232 Cal.App.4th at p. 965.) If the

employer does so, the burden shifts back to plaintiff to establish the employer's proffered reasons are untrue or pretextual, or to offer other evidence of intentional discrimination. (*Guz, supra,* 24 Cal.4th at p. 356; *Swanson v. Morongo Unified School Dist., supra,* 232 Cal.App.4th at p. 965.)

An employer meets its summary judgment burden by presenting evidence negating an element of the employee's prima facie case or establishing a nondiscriminatory reason for the employment action. (*Swanson v. Morongo Unified School Dist., supra,* 232 Cal.App.4th at p. 965; *Willis v. Superior Court* (2011) 195 Cal.App.4th 143, 160.) An employer moving for summary judgment may skip to the second step of the analysis by demonstrating it has a legitimate business reason, unrelated to intentional discrimination. (*Guz, supra,* 24 Cal.4th at p. 357; *Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 832 (*Batarse*).) Plaintiff then has the burden of rebutting this facially dispositive showing by pointing to evidence which raises a rational inference of intentional discrimination. (*Guz, supra,* 24 Cal.4th at p. 357; *Batarse, supra,* 209 Cal.App.4th at p. 832.)

Plaintiff may show defendants' proffered reason is pretextual through direct or circumstantial evidence. As explained by the First Appellate District, Division Two in *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68: "'[T]he plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."' [Citation.] Circumstantial evidence of '"pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate' on an improper basis. [Citations.] With direct evidence of pretext, '"a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." [Citation.] The plaintiff is required to produce "very little" direct evidence of the employer's discriminatory intent to move past summary judgment.' [Citation.]" (Accord, *Batarse, supra,* 209 Cal.App.4th at p. 834.) Our colleagues in the First Appellate District, Division Two stated: "An employee in this situation can not 'simply

26

show the employer's decision was wrong, mistaken, or unwise.  Rather, the employee "'"must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [. . . asserted] non-discriminatory reasons." [Citations.]'  [Citations.]"  [Citation.]'"  (*Morgan v. Regents of University of California, supra,* 88 Cal.App.4th at p. 75; accord, *Batarse, supra,* 209 Cal.App.4th at p. 834.)

Plaintiff admits defendants documented performance deficiencies during the months leading up to his termination.  But plaintiff contends defendants' proffered reason for terminating him was pretextual.  Plaintiff contends Ms. Tucker falsely testified she did not intent to terminate plaintiff when she issued the January 5, 2010 written warning. Plaintiff asserts Ms. Tucker's own e-mails belie her exculpatory deposition testimony. On January 4, 2010, Ms. Tucker e-mailed the human resources manager, Ms. Douglass: "Paige and I have had performance issues with [plaintiff] that we've documented since our conversation with [plaintiff] in November.  Should we add them to [t]he document cited or can we use them to terminate him?"  Ms. Douglass responded:  "They should [be added] to the doc because we need a warning in effect to term[inate] and if the other issues took place before the warning they should be added."

Plaintiff argues Ms. Tucker's deposition testimony creates an inference of guilt that provides sufficient evidence of intentional discrimination.  We respectfully disagree. In *Guz*, our Supreme Court explained:  "[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statues do not prohibit lying, they prohibit discrimination.  ([*St. Mary's Honor Center v.*] *Hicks*[ (1993)] 509 U.S. 502, 521. . . .)  Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons.  (*Id.*, at p. 517. . . .)  Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause*

27

of the employer's actions. (*Id*., at pp. 510-520. . . .)" (*Guz, supra,* 24 Cal.4th at pp. 360-361; *Rosenfeld v. Abraham Joshua Heschel Day School, Inc., supra,* 226 Cal.App.4th at pp. 898-899; *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1011-1012.) Even if we assume Ms. Tucker intended to discharge plaintiff, rather than motivate him, this does not create an inference he was terminated because of his age.

Plaintiff also contends defendants began to thoroughly document his performance deficiencies after he refused the Pension Plus offer. He argues this is circumstantial evidence of pretext. But it is undisputed plaintiff received advisory memoranda documenting his performance issues prior to the Pension Plus offer in 2008. On May 11, 2006, plaintiff was issued an advisory memorandum for poor attendance. On January 18, 2007, plaintiff received another advisory memorandum for poor performance. Plaintiff admits he received various advisory memoranda but contends his performance deficiencies became serious enough to warrant a written warning and termination only after he refused the Pension Plus offer. But plaintiff cannot simply rebut defendants' legitimate business reason for firing him by arguing his performance deficiencies did not warrant discharge. As stated by our colleagues in the Sixth Appellate District in *Hicks v. KNTV Television, Inc., supra,* 160 Cal.App.4th at page 1011: "'A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.' (*Chapman v. AI Transport*[ (11th Cir. 2000)] 229 F.3d 1012, 1030.)" As to other evidence relied upon by plaintiff, we do not consider it because the documents were attached to Ms. Gallagher's unsigned declaration. (*Kulshrestha v. First Union Commercial Corp., supra,* 33 Cal.4th at pp. 606, 619; *Gonzalez v. Kalu, supra,* 140 Cal.App.4th at p. 25, fn.2.) We conclude plaintiff failed to produce evidence that defendants' reasons for terminating him were pretextual. The trial court correctly granted summary judgment in defendants' favor.

## V.  DISPOSITION

The judgment is affirmed.  Defendants, Tiffany and Company, Jodie Tucker and Paige Pomerantz, shall recover their appeal costs from plaintiff, Khoren Simonyan.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

BAKER, J

29